IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

DIEGO HERNANDEZ, individually and
as an elected official and member of the
Oregon House of Representatives,

        Plaintiff,

    v.

THE OREGON LEGISLATURE, THE
OREGON HOUSE OF REPRESENTATIVES,
RON NOBLE, in his official and person capacity,
JULIE FAHEY, in her official and personal
capacity, JACKIE SANDMEYER, in her official
and personal capacity, and TINA KOTEK, in her
Official and personal capacity,

        Defendants.

Case No. 6:21-cv-00238-MK
OPINION AND ORDER

_____

AIKEN, District Judge:

      Plaintiff, Diego Hernandez, brings this action pursuant to 28 U.S.C. § 1983

against defendants, the Oregon Legislature, the Oregon House of Representatives,

PAGE 1 – ORDER AND OPINION

Representative Ron Noble, R-District 24, Representative Julie Fahey, D-District 14, Interim Director of the Legislative Equity Office Jackie Sandmeyer, and House of Representatives Speaker Tina Kotek, D-District 24. This case arises out of an investigation into allegations that plaintiff engaged in harassing conduct which has resulted in his potential expulsion from the Oregon House of Representatives. Plaintiff alleges claims for due process and equal protection violations under the Fourteenth Amendment as well as a claim for First Amendment retaliation. He also seeks a declaratory judgment that Rule 27 of the Oregon House of Representatives facially unconstitutional and unconstitutional as applied to him. Now before the Court is plaintiff's motion for a temporary restraining order ("TRO") and emergency stay. Doc. 2. For the reasons set forth herein, the motion is denied.

## BACKGROUND

Plaintiff is a member of the Oregon House of Representatives, one of the two chambers comprising the Oregon Legislature. Plaintiff has represented District 47 in that body since 2019. In the Spring of 2020, allegations of harassment came to light related to plaintiff's relationship with women who had business before or worked in connection with the Oregon Legislature. These allegations prompted an investigation for potential violations of Legislative Branch Personnel Rule 27 ("Rule 27") by the Legislative Equity Office ("LEO") which is headed by defendant Jackie Sandmeyer.

PAGE 2 – ORDER AND OPINION

Rule 27 is the Oregon Legislative Branch's workplace harassment policy. The policy applies to members of the Legislature like plaintiff. Those who are covered by the policy "are expected to conduct themselves in a manner that is free of harassment and to discourage all harassment in the workplace and at events, professional meetings, seminars or any events at which legislative business is conducted." Compl. Ex 1. at 1. If a formal complaint is filed alleging inappropriate conduct by a legislator, an experienced investigator who is not an employee of the Legislative Assembly is appointed to conduct the investigation into the allegations. Members and other persons involved in the investigation must keep information regarding the investigation confidential.

Upon completion of her investigation, the investigator then forwards a final report to a "special committee on conduct." *Id.* at 4. The Committee must then hold a public hearing on the allegations, giving notice to both the complainant and the alleged harasser. "At the hearing, the complainant, and alleged harasser, or their attorneys may present documents or other evidence and may suggest witnesses." *Id.* However, by rule, only Committee members can question or address witnesses. The Committee must then consider the final report as well as the testimony and other evidence presented at the hearing and report a recommendation to full legislative chamber to which it belongs. The Committee may recommend reprimand, censure, or expulsion of a member. The Committee may also recommend taking no further action. After a review period, the recommendation shall be made to the full chamber

PAGE 3 – ORDER AND OPINION

for which the Committee serves.  That body will then consider adopting sanctions against the member, which may only be adopted by a two-thirds majority vote.

Here, the LEO hired an outside attorney, Sara Ryan, to conduct the investigation into the allegations against plaintiff.  On May 5, 2020, plaintiff was notified that a Rule 27 investigation regarding a complaint against him was being conducted by Ms. Ryan.  Plaintiff was also interviewed by the investigator on August 19, 2020.  Ms. Ryan contacted defendant on December 17, 2020 to request a second interview regarding two new subjects of the investigation, however plaintiff alleges that the second interview never occurred.[1]

The investigator issued her draft report on December 23, 2020.  A final report was later issued to the House Conduct Committee, though the exact date is unclear from the pleadings.

On January 21, 2021, plaintiff posted a public statement on his campaign's Facebook page disputing the allegations against him and attacking the House of Representative's investigation.[2]  On January 31, 2021, defendant Sandmeyer wrote to plaintiff alerting him that her office had received a report of retaliation in relation

---

[1] It has been reported by however that plaintiff did submit to a second interview on January 13, 2021 with his counsel present. https://www.opb.org/article/2021/01/25/investigation-oregon-state-lawmaker-likely-created-a-hostile-workplace-at-state-capitol/.    However, for the purposes of this motion, the Court accepts plaintiff's allegations as true.

[2] In that statement, plaintiff also alleged that the investigation was politically motivated because he opposed Speaker Kotek on a vote the previous year.

PAGE 4 – ORDER AND OPINION

to the Rule 27 investigation and his social media statement. No new interim measures were recommended by the LEO, but plaintiff was informed that Ms. Ryan would investigate the report to determine if retailing occurred against any of the complainants.

Plaintiff submitted a response and rebuttal to the final report on January 31, 2021, though he alleges it was heavily redacted by the LEO to strip out identifying information regarding his accusers.

On February 1, 2021, the House Conduct Committee, which was co-chaired by defendants Julie Fahey and Ron Noble, convened to consider whether the conduct alleged in the final report violated Rule 27. Over the course of that week, the committee heard testimony from five anonymous subjects of the investigation. Plaintiff also presented evidence and arguments disputing the allegations and contesting the investigative process through his counsel.[3] On February 5, 2021, the House Conduct Committee voted to recommend to the full chamber that plaintiff be expelled from the House of Representatives.[4]

---

[3] In a statement to the committee, plaintiff claimed to "take full responsibility for my actions in making anyone uncomfortable." Lafky Decl. Ex. 5 at 1. He qualified his actions as "mistakes" and "offenses of ignorance." *Id*. at 2.

[4] In his complaint, plaintiff alleges that the Committee voted to make this recommendation on a 3-1 vote. Compl. ¶ 30. However, state records, of which this Court takes notice, indicate that the vote was unanimous. https://olis.oregon legislature.gov/liz/2021R1/Downloads/MeasureAnalysisDocument/56431. Judicial notice may be taken of "[p]ublic records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." *Callister v. Owen*, 2017 WL 1499224, at *2 (D. Idaho 2017) (citing to *U.S. ex rel.*

PAGE 5 – ORDER AND OPINION

The House of Representatives was originally set to consider HR-1A, the proposed resolution expelling plaintiff from that body on February 16, 2021. However, inclement weather delayed those proceedings. Consideration of the resolution by the House of Representatives is now set for February 23, 2021. Speaker Kotek has represented that, when the matter is brought before the House, all limits on debate will be lifted so that any member, including plaintiff, can speak on the resolution as long they wish. Plaintiff has stated that he will take part in floor debate on the proposed resolution.

Plaintiff originally filed this action in the Circuit Court of the State of Oregon for Marion County. (Case No. 21CV05290). Prior to service being perfected, defendants filed a notice of removal pursuant to 28 U.S.C. 1441 and 1443, removing the action to this Court. Doc. 1. Contemporaneously, plaintiff filed the present motion for a TRO and emergency stay. Doc. 2. The Court allowed defendants to file responsive briefing in this matter.[5] The Court heard oral argument on this matter on February 18, 2021.

---

*Modglin v. DJO Glob. Inc.*, 48 F. Supp.3d 1362, 3181 (C.D. Cal. 2014). However, When the court takes notice of a public record, including websites, it does so "not for the truth of the facts recited therein, but for the existence of the [record] which is not subject to reasonable dispute over its authenticity." *Vesta Corp. v. Amdocs Management Ltd.*, 129 F.Supp. 3d 1012, 1021 (D. Or. 2015) (internal citations omitted).

[5] Plaintiff filed a reply to defendants' opposition shortly before oral argument on this matter. The Court notes that it has thoroughly reviewed all submitted briefing and exhibits prior to reaching its decision.

PAGE 6 – ORDER AND OPINION

## LEGAL STANDARD

A TRO is an "extraordinary and drastic remedy." *Mazurek v. Armstrong*, 520 U.S. 986, 972 (1997). The purpose of a TRO is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction. *See Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). The same general legal standards govern TROs and preliminary injunctions. Fed. R. Civ. P. 65; *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A plaintiff seeking such relief must establish (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the plaintiff's favor; and (4) a preliminary injunction is in the public interest. *Winter v. Nat'l Resources Def Council*, 555 U.S. 7, 21 (2008).

## DISCUSSION

The power to expel members from the Oregon Legislature is exclusively granted to the Legislative Branch by the Oregon Constitution which provides that "[e]ither house may punish its members for disorderly behavior, and may with the concurrence of two thirds, expel a member; but not a second time for the same cause." Or. Const. Art. IV, § 15

In his motion, plaintiff requests that this Court enjoin defendants from

(1) proceeding with expulsion, sanction, punishment, or any other adverse action against Plaintiff based on the findings and recommendations from the Rule 27 investigation and/or hearing; (2)

PAGE 7 – ORDER AND OPINION

placing any restrains on Plaintiff from exercising his freedom of speech/expression; and (3) proceeding with expulsion, sanction, punishment, or any other adverse action against Plaintiff for exercising his freedom of speech/expression.

Pl's Mot. For TRO. at 2.  Plaintiff also moves that this Court "stay any vote to expel sanction, punish, or take any other adverse action against Plaintiff." *Id.*

The relief requested by the plaintiff is somewhat novel.  The Court notes that while there have been cases in other federal districts where legislative members have brought suits related to their expulsion, those claims were filed after the expulsion occurred.  Importantly, plaintiff cites no cases, nor has the Court found any authority, where a Federal District Court has enjoined a state legislature from taking a vote on a bill or resolution before it.  This Court has serious reservations about exercising such action here as plaintiff has made no showing that House of Representatives will vote to expel him by the required two thirds margin.

This is the greatest obstacle to granting the preliminary relief requested by plaintiff.  While his pleadings are somewhat unclear, many of plaintiff's potential injuries only arise if he is expelled from the House of Representatives.  In his motion he specifically contends that "he will suffer public condemnation, damaged reputation, and reduced financial expectations *if* the House of Representatives expels [p]laintiff without providing him a meaningful opportunity to be heard."  Pl's. Mot for

TRO. at 8. (emphasis added).[6]  However, plaintiff has not plead any facts that his expulsion is certain or even likely to occur.  In order to forestall the possibility of this uncertain outcome, the Court would need to intrude on the prerogatives of the Oregon Legislature, ordering, as plaintiff requests, that the House of Representatives not even consider a resolution submitted by its own members.

Ultimately, the Court denies this motion because plaintiff has not satisfied the factors outlined in *Winter*, but certainly "[p]rudence dictates that a federal court should exercise a respectful reluctance to interfere in the measures taken by a state legislature to regulate its affairs, discipline its members, and protect its integrity and good name." *Monserrate v. New York State Senate*, 599 F.3d 148, 157 (2d Cir. 2010)

I.    *Initial Matters*

Defendants raise two preliminary objections to the Court granting plaintiff's motion. Defendants first argue that this Court should not consider this motion or lawsuit while the Oregon Legislature is in session.  Article VI. § 9 of the Oregon Constitution provides that "Senators and Representatives in all cases, […] shall not be subject to any civil process during the session of the Legislative Assembly."

---

[6] To the extent plaintiff claims that he has been damaged by the investigation and vote of the House Conduct Committee, that harm has already occurred and does not warrant prospective injunctive relief.  Indeed, plaintiff complains that he "has already been the subject of public condemnation and multiple articles have been written about the proceedings against him in an unfavorable light, likely because Plaintiff was not provided with an opportunity to refute the charges made against him." *Id.*

Defendants contend that because plaintiff may not advance civil process at this time, the Court should also not entertain the application for a TRO.

As an initial matter, defendants fail to show that a state constitutional provision is binding on this Court when it is considering claims for violations of Federal law. *See United States v. Gillock*, 445 U.S. 360, 370 (1980). ("in those areas where the Constitution grants the Federal Government the power to act, the Supremacy Clause dictates that federal enactments will prevail over competing state exercises of power.")  Accordingly, the Court does not find that this provision prevents it from considering the motion.[7]

Next defendants argue that this case is not justiciable because it presents a political question.  If a case presents a political question, federal courts lack subject matter jurisdiction to decide that question. *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 982 (9th Cir. 2007).  The political question doctrine is "primarily a function of the separation of powers." *Baker v. Carr,* 369 U.S. 186, 210 (1962).  In *Baker,* the Supreme Court identified six criteria, each of which could individually signal the presence of a political question:

> [(1) A] textually demonstrable constitutional commitment of the issue to a coordinate political department; [(2)] a lack of judicially discoverable and manageable standards for resolving it; [(3)] the impossibility of deciding without an initial policy determination of a kind clearly for

_____

[7] If defendants are making an argument that the individual defendants who are members of the Legislature are entitled to legislative immunity, that would weigh in the Court's consideration of whether plaintiff can show a likelihood of success on the merits.

nonjudicial discretion; [(4)] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; [(5)] an unusual need for unquestioning adherence to a political decision already made; or [(6)] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker,* 369 U.S. at 217.  The *Baker* Court made clear however, that "it is the relationship between the judiciary and the coordinate branches of the Federal Government, and not the federal judiciary's relationship to the States, which gives rise to the 'political question.'" *Id.* at 211; *see also Gillock*, 445 U.S. at 370 ("as we have noted, federal interference in the state legislative process is not on the same constitutional footing with the interference of one branch of the Federal Government in the affairs of a coequal branch").

Defendants suggest that the Supreme Court's more recent holding in *Rucho v. Common Cause*, undermines *Baker*. __ U.S. __, 139 S. Ct. 2484 (2019).  This Court does not read *Rucho* to overrule *Baker* as defendants suggest.  In *Rucho*, the Supreme Court found that partisan political gerrymandering presented a political question rendering the case nonjusticiable.  The Supreme Court itself noted, however, that *Rucho* presented a "rare circumstance" where it had "no commission to allocate political power and influence in the absence of a constitutional directive or legal standards to guide us in the exercise of such authority."  *Id.* at 2508.

Questions as to whether this Court could impose manageable standards resolving disputes over the expulsion of a state legislator or whether cases such as

this can be handled under basic equal protection and due process principles are best left for another day.  For now, it is sufficient to note that numerous other Courts have not dismissed similar due process suits on political question grounds. *See Mcarley v. Sanders, et al.*, 309 F. Supp 8, (M.D. Ala. Jan 27, 1970); *Gamrat v. Allard*, 320 F. Supp. 3d 927 (W.D. Mich. 2018); *Shooter v. Arizona*, 2019 WL 2410808 (D. Ariz. June 7, 2019); *Durham v. Eley*, 2020 WL 7385277 (M.D. Tenn. Dec. 16, 2020), (all dismissed on other grounds); *see also Monserrate v. New York State Senate*, 695 F. Supp. 2d 80 (S.D.N.Y. Feb. 19, 2010), *aff'd*, *599* F.3d 148 (2d Cir. 2010) (denying preliminary injunction on other grounds).

II.    *Winter Factors*

A.    *Likelihood of Success on the Merits*

1.    *Legislative Immunity*

The Court first notes that Representative Fahey, Representative Noble, and Speaker Kotek may be entitled to legislative immunity from plaintiff's Section 1983 claims.  It is well established that federal, state, and regional legislators are entitled to absolute immunity from civil liability for their legislative activities. *Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998); *Tenney v. Brandhove,* 341 U.S. 367, 372, (1951). "Absolute immunity includes within its protections anything "generally done in a session of the House by one of its members in relation to the business before it." *Doe v. McMillan*, 412 U.S. 306, 311 (1973) (internal citations omitted).

PAGE 12 – ORDER AND OPINION

Absolute legislative immunity attaches to all actions "in the sphere of legitimate legislative activity." *Tenney*, 341 U.S. at 376. Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it. *Bogan*, 523 U.S. at 54. "An absolute immunity defeats a suit [for damages] at the outset, so long as the official's actions were within the scope of the immunity." *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976).

Here, the Oregon Legislature has been specifically granted the power to expel members for disorderly conduct by the Oregon Constitution. House Ccommittee proceedings to investigate such claims, propose legislation for sanctions related to fact finding would seem to fall within the sphere of legitimate legislative activity.

2.    *Due Process Claims*

Plaintiff alleges that the individual defendants have violated his Fourteenth Amendment right to procedural due process. To establish a claim for violation of due process, plaintiff must show that defendants deprived him of a constitutionally protected property or liberty interest without adequate procedural protections. *Haggard v. Curry*, 631 F.3d 931, 935 (9th Cir. 2010).

Turning to the interests at stake, plaintiff alleges that he possesses a property interest in his work benefits including his salary, per diem, and other state benefits. Plaintiff cannot not claim a property interest in his office itself. "The decisions are numerous to the effect that public offices are mere agencies or trusts, and not property as such. […] In short, generally speaking, the nature of the relation of a

PAGE 13 – ORDER AND OPINION

public officer to the public is inconsistent with either a property or a contract right." *Taylor v. Beckham*, 178 U.S. 548, at 577 (1900) *see also Burks v. Perk*, 470 F.2d 163, 165 (6th Cir. 1972) (noting that "[p]ublic office is not property within the meaning of the Fourteenth Amendment.")

Setting aside whether plaintiff's office and the associated benefits are inextricably intertwined, the Court notes that no actual deprivation of the benefits has yet occurred here.

Plaintiff also pleads a liberty interest in his reputation, of which he contends he will be deprived if the House of Representatives votes to expel him.  However, "injury to reputation alone is not sufficient to establish a deprivation of a liberty interest protected by the Constitution." *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002) (citing *Paul v. Davis*, 424 U.S. 693, 711 (1976).[8]  Instead, courts apply a stigma-plus test when determining whether a plaintiff has established a claim for deprivation of liberty based on governmental defamation. *Id.*  "To prevail on a claim under the stigma-plus doctrine, plaintiff must show (1) public disclosure of a stigmatizing statement by the government, the accuracy of which is contested; *plus* (2) the denial of some more tangible interest such as employment, or

---

[8] Defamation by an elected official does not state a claim under 42 U.S.C. § 1983. *Paul v. Davis*, 424 U.S. at712, 96 S. Ct. 1155, 1161, 47 L. Ed. 2d 405, 414 (1976). ("Any harm or injury to [reputation], even where as here inflicted by an officer of the State, does not result in a deprivation of any "liberty" or "property" recognized by state or federal law, nor has it worked any change of respondent's status as theretofore recognized under the State's laws.")

PAGE 14 – ORDER AND OPINION

the alteration of a right or status recognized by state law." *Green v. Transportation Sec. Admin.*, 351 F. Supp. 2d 1119, 1129 (W.D. Wash. 2005) (emphasis added). Where these elements exist, the plaintiff is "entitled to notice and a hearing to clear his name." *Bollow v. Federal Reserve Bank,* 650 F.2d 1093, 1100 (9th Cir.1981).

It is not seriously disputed that plaintiff would satisfy the first prong of the stigma-plus test. However, plaintiff has not suffered the denial of a tangible interest, as the House has not voted expel him, nor has he presented evidence that the House will certainly expel him.

Assuming, however, that plaintiff had shown the deprivation of a protected interest, it appears, based on this record, that plaintiff received adequate due process. See *Monserrate*, 599 F.3d at 158 ("the availability of adequate process defeats a stigma-plus claim.") (internal citations and quotations omitted).

Constitutional due process requires that a party affected by government action be given "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, (1976) (internal quotation marks and citations omitted); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ("The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.")

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972). "In determining how much process is due, a court must weigh (1) the private interest

PAGE 15 – ORDER AND OPINION

affected, (2) the risk of erroneous deprivation through the procedures used and the value of other safeguards, and (3) the government's interest." *Spinelli v. City of N.Y.,* 579 F.3d 160, 170 (2d Cir. 2009) (citing *Mathews v. Eldridge,* 424 U.S. at 335).

Here, plaintiff received notice of the allegations against him and was interviewed by an independent investigator.   Plaintiff was given an opportunity to review and respond to the investigator's report.   Plaintiff also appeared through counsel at the House Conduct Committee hearing and was allowed to present evidence and argument regarding the allegations.    Indeed, plaintiff's counsel presented a lengthy statement to the Committee which made many of the same arguments plaintiff is making here.   The Committee then considered the evidence before it and voted to recommend that the full House of Representatives expel plaintiff for disorderly conduct.    Following this, plaintiff is still guaranteed the opportunity to have unlimited time to speak about these allegations and the investigative process to the House of Representatives when it considers the resolution expelling him.

Plaintiff makes numerous arguments that defendants did not properly follow the requirements of Rule 27.   For example, plaintiff alleges he was only given seven days to respond to the draft report instead of ten.   He also complains that he was not allowed to cross-examine his accusers.   However, these technicalities do not in themselves mean that plaintiff has failed received adequate due process under the Fourteenth Amendment.   The "very nature of due process negates any concept of

PAGE 16 – ORDER AND OPINION

inflexible procedures universally applicable to every imaginable situation.*" Cafeteria*

*Workers v. McElroy*, 367 U.S. 886, 895 (1961).  The Supreme Court has also explained:

> [m]ere violation of a state statute does not infringe the federal
> Constitution.  And state action, even though illegal under state law, can
> be no more and no less constitutional under the Fourteenth Amendment
> than if it were sanctioned by the state legislature.

*Snowden v. Hughes*, 321 U.S. 1, 11 (1944) (internal citation omitted).

Here the Court finds that plaintiff has failed to show a likelihood of success

on the merits of this claim because he has not been deprived of a protected interest

and he has received a meaningful opportunity to be heard.

3.    *Equal Protection Claim*

Plaintiff is Latino, and he alleges that Speaker Kotek, Representative Fahey,

Representative Noble, and Ms. Sandmeyer's actions in this case "are based

substantially on [his] race and/or nation origin[.]" Comp. at ¶ 63.   He alleges that

"many Caucasian members […] have committed much more severe acts" than him

but never faced expulsion.  *Id.* at ¶ 64.  Excluding these two conclusory allegations,

plaintiff has presented no evidence that defendants took any actions based on his

ethnicity or that Rule 27 facially involves a suspect classification.  *See Wright v.*

*Incline Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 1140 (9th Cir. 2011).  Indeed, in

plaintiff's numerous exhibits detailing some aspects of the investigation, his race is

not mentioned.  Rather the focus of the investigation was on the numerous allegations

of harassment against him.    Further, plaintiff do not present any substantive argument in his motion that this specific claim is likely to succeed on the merits.

At this time, the Court cannot find that plaintiff has shown likely to succeed on his equal protection claim based on the limited allegations in his complaint.

4.    *First Amendment Retaliation Claim*

In determining whether a public employee has suffered retaliation for asserting her First Amendment rights, courts must determine (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).  A plaintiff bears the burden of demonstration at the first three steps of the inquiry; at step four, the burden shifts to the defendant.  *Id*. at 1070-72.  Steps one, two, and four are questions of law; steps three and five are questions of fact.[9]  *Id*.

---

[9] The court in *Eng* noted that steps two and four, while ultimately legal questions, may entail resolution of underlying factual disputes.  552 F.3d at 1071.

PAGE 18 – ORDER AND OPINION

As noted above, prior to the House Conduct Committee convening, defendant posted a lengthy statement on his campaign's Facebook page commenting on the investigation and the allegations against him. After doing so, he received noticed from the LEO that this activity had been reported to them as potential retaliation against the complainants under Rule 27. No interim measures were taken at the time of the notification, and the matter was referred to the outside investigator, Ms. Ryan.

Plaintiff alleges that because of this conduct, he suffered a deprivation of his First Amendment right to free speech. The Court finds that he has failed to show a likelihood of success on the merits of this claim for several reasons.

First, the parties do not dispute that the plaintiff was speaking on a matter of public concern. Defendants argue, however, that plaintiff did not make the statement as a private citizen, but rather that he did so in his capacity as an elected representative addressing his constituents. No evidence has been submitted regarding the use of plaintiff's campaign Facebook, specifically if it was regularly used a tool of governance to inform the public of plaintiff's official activities or cloaked in the trappings of his office. *See Garnier v. Poway Unified Sch. Dist*, 2019 WL 4736208, at *7 (S.D. Cal. Sept. 26, 2019). However, the message itself indicates plaintiff was speaking in a public role as an elected representative. First, it was broadly addressed by plaintiff "[t]o my community[.]" Hernandez Supp. Decl. Ex.12

PAGE 19 – ORDER AND OPINION

at 1.  In addition to addressing the allegations against him, plaintiff also commented

on other legislative work he was undertaking.  For example, he wrote that:

> I've been working hard for my district through these challenges. My
> recent re-election and my public service is about the families of my
> district. I am dedicated to making sure they get the State's full support
> and their fair share of the resources they need during this turbulent
> crisis and uneven recovery. Despite my criticisms of the process, I
> respect the conduct committee members, and I look forward to the
> conduct committee hearing next week, where I will submit into evidence
> my full rebuttal. I hope we can move forward and focus on providing
> relief to Oregonians impacted by COVID and the economic downturn
> without sacrificing our values or asking vulnerable workers and
> frontline communities to bear the worst burdens.

*Id*.at 4-5.  Plaintiff signed the statement "Rep. Diego Hernandez" using his official

title.

Even assuming that the statement was made in a private capacity, plaintiff

still could not show that an adverse employment action has occurred as a result of

the statement.  Plaintiff was simply informed that the statements had been reported

to the LEO and that they had been forwarded to the appointed investigator.  This

statement was not considered by the House Conduct Committee at its recent hearings

nor was it a basis for their recommendation that plaintiff be expelled based on the

allegations of harassment.

Accordingly, the Court finds that plaintiff has failed to show a likelihood of

success on the merits of his first amendment retaliation claim.

/ / /

/ / /

PAGE 20 – ORDER AND OPINION

B.    *Likelihood of Irreparable Harm*

It is axiomatic that a moving party must demonstrate a significant threat of *impending* irreparable injury, irrespective of the magnitude of the injury. *Big Country Foods, Inc. v. Bd. of Educ. of Anchorage Sch. Dist., Anchorage, Alaska*, 868 F.2d 1085, 1088 (9th Cir. 1989). "Speculative injury does not constitute irreparable injury." *Goldie's Bookstore, Inc. v. Superior Court of Cal.,* 739 F.2d 466, 472 (9th Cir.1984). As noted above, plaintiff has not yet shown the requisite likelihood of irreparable harm necessary for the Court to grant this motion. The House not yet voted on whether to expel him. More importantly, plaintiff has not presented any evidence to the Court that the expulsion is inevitable or even likely.

Also, lost benefits and salary or reduced earning potential could be compensable through monetary damages. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm. *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (internal citation omitted.)

C.    *Balance of Equities and the Public Interest in an Injunction.*

Plaintiff must demonstrate that "the balance of equities tips in his favor" and that "an injunction is in the public interest." *Winter*, 555 U.S. at 20. "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). In assessing these factors, the Court must "balance the competing claims of injury and must; consider the effect on each party of the granting or withholding

PAGE 21 – ORDER AND OPINION

of the requested relief," as well as "the public consequences in employing the extraordinary remedy of injunction." *Winter*, 553 U.S. at 24.

These factors tip sharply in favor of denying the TRO for several reasons. First, granting the TRO would require this Court to interfere with internal deliberations and processes of the Oregon Legislature on an incredibly limited record. Placing such a restraint on an elected Legislature would not be in the public interest. Further, while not binding on this Court, principals of comity and federalism indicate that the Court should give some deference to the Oregon's constitutional provisions protecting the individual defendants from civil service while the legislature is in session.

More importantly, the public has strong interest in the Legislature being able maintain its integrity. The Oregon Legislature is entrusted with power over of policing its own members. The Second Circuit recognized in a similar context that:

> [i]t is fundamental that a legislature has an important interest in upholding its reputation and integrity. *See, e.g., In re Chapman,* 166 U.S. 661, 668, 17 S.Ct. 677, 41 L.Ed. 1154 (1897) (recognizing that Congress "necessarily possesses the inherent power of self-protection"); *French v. Senate of State of Cal.,* 146 Cal. 604, 606, 80 P. 1031 (1905) ("[E]very legislative body in which is vested the general legislative power of the state, has the implied power to expel a member for any cause which it may deem sufficient."); *Hiss v. Bartlett,* 69 Mass. 468, 473 (1855) ("The power of expulsion is a necessary and incidental power, to enable the house to perform its high functions, and is necessary to the safety of the State. It is a power of protection.").

*Monserrate v. New York State Senate*, 599 F.3d at 155–56.

PAGE 22 – ORDER AND OPINION

As discussed at oral argument, Rule 27 has been heavily revised in recent years to provide increased accountability for workplace harassment. The Legislature has been subject to similar scandals in past years, and it may be, as plaintiff alleges, that some transgressors were able to resign or reach some other settlement prior to facing expulsion. However, the public has interest in beginning to address these inequities at the highest levels of state government and ensuring that harassment is no longer tolerated or excused.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for a TRO (Doc. 2) and emergency stay is DENIED.

IT IS SO ORDERED.

Dated this 20th day of February 2021.


_____
s/Ann Aiken
Ann Aiken
United States District Judge


PAGE 23 – ORDER AND OPINION