THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| DEIGO HERNANDEZ; | Civ. No. 6:21-cv-00238-AA |
|         Plaintiff, | **OPINION & ORDER** |
|     v. | |
| OREGON HOUSE OF REPRESENTATIVES; OREGON STATE LEGISLATURE; RON NOBLE; JULIE FAHEY; JACKIE SANDMEYER; TINA KOTEK, | |
|         Defendants. | |

AIKEN, District Judge.

This case comes before the Court on a Motion to Dismiss filed by Defendants. ECF No. 18. The Court concludes that this motion is suitable for resolution without oral argument. For the reasons set forth below, the Motion is GRANTED and this case is DISMISSED.

**LEGAL STANDARD**

To survive a motion to dismiss under the federal pleading standards, the complaint must include a short and plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court is not required to accept legal conclusions, unsupported by alleged facts, as true. *Id.*

## BACKGROUND

Defendant Oregon Legislature is the legislative body of the State of Oregon and Defendant Oregon House of Representatives is one of the two chambers comprising the Legislature. Compl. ¶ 3. ECF No. 1. Defendant Tina Kotek is the Speaker of the Oregon House of Representatives. *Id.* at ¶ 6.

The House has established a Conduct Committee of four members, which is co-chaired by Defendants Julie Fahey and Ron Noble. Compl. ¶ 4. Defendant Jackie Sandmeyer is the head of the House Legislative Equity Office ("LEO"). *Id.* at ¶ 5.

The House has adopted a resolution, known as Legislative Branch Personnel Rule 27, to resolve issues involving misconduct, harassment, sexual harassment, discrimination, and retaliation by members of the legislature, legislative staff, lobbyists, and others. Abrams Decl. Ex. B. ECF No. 19.[1] Under Rule 27, a complainant may make a report of prohibited behavior to the LEO. *Id.* at 5. The LEO conducts an investigation by referral of the matter to an independent investigator who must conduct her inquiry within a certain amount of time, subject

---

[1] An earlier version of Rule 27 was attached as an exhibit to the Complaint but Defendants have supplied the current version, which was in effect during the relevant period in the Abrams Declaration. ECF No. 19. Plaintiff has not objected to Defendants' submission.

to approved extensions. *Id*. at 10. The independent investigator is charged with keeping both the complainant and the respondent apprised of the status of the investigation on a regular basis or upon request. *Id*. The investigator must prepare a draft written report prior to the conclusion of the investigation and must provide the report to the complainant and the respondent, who each have the opportunity to submit responses. *Id*. at 10-11. If the respondent is a member of the Legislature, the final report must be delivered to the complainant, the respondent, the LEO, and the Conduct Committee for the chamber in which the respondent serves. *Id*. at 11. The complainant and respondent may then submit written challenges to the factual findings in the final report to the Conduct Committee. *Id*.

The Conduct Committee must then hold a hearing at which the complainant and respondent are permitted to appear, present documents and physical evidence, and suggest witnesses. Abrams Decl. Ex. B, at 11. The Conduct Committee may decide to hear witnesses, but only members of the Committee are permitted to question any witnesses called. *Id*. The Conduct Committee will then make a final determination of the facts and whether those facts constitute a violation of Rule 27. *Id*. The Conduct Committee also determines what, if any, remedial measures are necessary. *Id*. If the respondent is a member of the Legislature and if the Committee's recommendation is that the member be expelled from the Legislature, the Committee will report that recommendation to the chamber in which member serves and the chamber will act on the recommendation at the earliest opportunity. *Id*. at 12. Actual expulsion of a member of the Legislature is governed by article IV,

section 15 of the Oregon Constitution, which provides that either chamber may expel a member by a majority vote of two thirds. Or. Const. art. IV, § 15.

Plaintiff Diego Hernandez was the elected representative for Oregon House District 47 beginning in January 2019. Compl. ¶ 2. In April 2020, a complaint was made against Plaintiff alleging that he had mistreated several women. *Id.* at ¶ 9. Kotek referred the complaint to the LEO, which triggered an investigation under Rule 27. *Id.* at ¶ 10. On May 5, 2020, Sandmeyer notified Plaintiff of the complaint and the investigation. *Id.* at ¶ 11. An independent investigator was appointed and an investigation lasting nearly 200 days was commenced. *Id.* at ¶¶ 12-14.

While the investigation was pending, Plaintiff issued a statement on Facebook opposing the Rule 27 proceedings against him. Compl. ¶ 47. Plaintiff alleges that he was accused of retaliation under Rule 27 based on the contents of this Facebook statement. *Id.*

On January 22, 2021, Plaintiff received a copy of the investigator's report. Compl. ¶ 15. The investigator concluded that Plaintiff had engaged in appropriate conduct and interactions with three women, identified pseudonymously in the report. *Id.* at ¶ 17. Plaintiff submitted a lengthy written response disputing the investigator's conclusions on January 29, 2021. *Id.* at ¶¶ 16-17; Compl. Ex. 3. Sandmeyer insisted that Plaintiff's response be redacted to protect the anonymity of the three women before it was submitted to the Conduct Committee. *Id.* at ¶¶ 20-22.

The Oregon House Conduct Committee, chaired by Fahey and Noble, convened a five-day hearing on the report, beginning on February 1, 2021. Compl. ¶ 25.

Plaintiff appeared before the Committee represented by counsel. *Id.* at ¶ 28. The Committee told Plaintiff that he would be required to opt between making a statement himself or presenting his case through counsel and Plaintiff chose to proceed through counsel. *Id.* at ¶¶ 27-28. One witness was called to testify before the Committee and four other witness presented statements to the Committee. *Id.* at ¶ 29. Plaintiff's counsel was not permitted to cross-examine the witness. *Id.* at ¶ 28.

At the conclusion of the hearing on February 5, 2021, the Conduct Committee found that Plaintiff had violated Rule 27 and voted to recommend that Plaintiff be expelled from the House. Compl. ¶¶ 29-30.[2]

Plaintiff filed this action on February 10, 2021 in the Marion County Circuit Court. ECF No. 1. On February 11, 2021, the Conduct Committee referred its recommendation to the Oregon House of Representatives as House Resolution 1. Supp. Lafky Decl. Ex. 11. ECF No. 7. Kotek represented to the Court that she would move the House to suspend its normal rules so that any member, including Plaintiff, would be able to speak for as long as they wished during the debate on House Resolution 1. Kotek Decl. ¶ 4. ECF No. 10. Plaintiff, in turn, represented to the Court that he planned to attend the session and participate in the debate. Suppl. Hernandez Decl. ¶ 6. ECF No. 12.[3]

---

[2] Although the Complaint alleges that the Conduct Committee voted 3-1 in favor of recommending expulsion, the Oregon Legislature's publicly available records indicate that the Committee's vote of unanimous. *See* https://olis.oregonlegislature.gov/liz/2021R1/Measures/Overview/HR1 (last accessed November 24, 2021).

[3] The Supplemental Lafky Declaration, the Kotek Declaration, and the Supplemental Hernandez Declaration were all submitted in the course of briefing Plaintiff's Motion for a Temporary Restraining Order. They present evidence that is beyond the scope of the Complaint and not strictly relevant for consideration of the present Motion to Dismiss but are included here to provide a complete picture of the procedural background of the case.

Page 5 –OPINION & ORDER

On February 12, 2021, Defendants removed the case to federal court. ECF No. 1. On the same day, Plaintiff filed an emergency motion for a temporary restraining order ("TRO"), seeking to enjoin the Oregon House of Representatives from taking up House Resolution 1. This Court heard oral argument on the TRO motion on February 18, 2021 and denied the motion in a written opinion issued on February 20, 2021. ECF Nos. 13, 15.

On February 22, 2021, Plaintiff notified the Chief Clerk of the House and the Oregon Secretary of State that he was resigning from his seat in the House, effective March 15, 2021. Abram Decl. Ex. A, at 1.[4] Following notice of Plaintiff's resignation, the House rescheduled its consideration House Resolution 1 until March 16, 2021 and then referred the matter back to the Conduct Committee. *See* https://olis.oregonlegislature.gov/liz/2021R1/Measures/Overview/HR1 (last accessed November 24, 2021). No vote was ever taken on House Resolution 1.

## DISCUSSION

Plaintiff's first claim for relief seeks a declaratory judgment that Rule 27 is unconstitutional both facially and as applied to Plaintiff. Plaintiff's second claim seeks an injunction prohibiting the Legislature from proceeding with a vote to sanction Plaintiff. And finally, Plaintiff brings a claim under 42 U.S.C. § 1983 against Fahey, Noble, Sandmeyer, and Kotek alleging (1) violation of his procedural due

---

[4] Plaintiff's Complaint predates his resignation from the House and so that fact is not alleged in the Complaint itself. However, Plaintiff confirms in his Response that he resigned from the House on February 22, 2021 and so the Court takes judicial notice of that fact. Pl. Resp. at 3. ECF No. 28.

process rights; (2) violation of his equal protection rights against; and (3) retaliation for the exercise of his First Amendment right to free speech.

I.      The Constitutionality of Rule 27

In his claim for declaratory relief, Plaintiff challenges the constitutionality of Rule 27 both facially and as applied to himself. "A facial challenge is a claim that the legislature has violated the Constitution, while an as-applied challenge is a claim directed at the execution of the law." *Young v. Hawaii*, 992 F.3d 765, 779 (9th Cir. 2021). A facial challenge is directed to the legislature and "the plaintiff must show that no set of circumstances under which the statute would be valid," and a court's review "would be limited to the text of the statute itself." *Id.* (internal quotation marks and citations omitted, alterations normalized). By contrast, an as-applied challenge "is wholly fact dependent" and asks if "the determinative facts shown by the evidence fall on the protected side of the applicable rule of constitutional privilege." *Id.* (internal quotation marks and citation omitted). Of the two claims, the facial challenge is the more difficult to prove. *Id.* When, as here, a court is presented with simultaneous facial and as-applied challenges, the Supreme Court has instructed that the as-applied challenge should be resolved before the facial challenge. *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484-85 (1989). Accordingly, the Court takes up Plaintiff's as-applied challenge first.

## A. As-Applied Challenge to Rule 27

Plaintiff maintains that the Complaint adequately alleges that he was deprived of his procedural due process rights by the operation of Rule 27 and that he was subjected to retaliation for the exercise of his right to free speech.

### 1. Procedural Due Process

To establish a claim for violation of procedural due process rights, Plaintiff must show that defendants deprived him of a constitutionally protected liberty or property interest without adequate procedural protections. *Haggard v. Curry*, 631 F.3d 931, 935 (9th Cir. 2010). Constitutional due process requires that a party affected by a government action be given "the opportunity to be heard a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks and citation omitted).

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "In determining how much process is due, a court must weigh (1) the private interest affected, (2) the risk of erroneous deprivation through the procedures used and the value of other safeguards, and (3) the government's interest." *Spinelli v. City of N.Y.*, 579 F.3d 160, 170 (2d Cir. 2009) (citing *Matthews*, 424 U.S. at 335).

Even if the Court were to assume, for purposes of this motion, that Plaintiff has alleged a protected liberty or property interest, and that he was deprived of that interest, his claim would still fail because Plaintiff received constitutionally adequate procedure. As the Court noted in its order denying the TRO, Plaintiff received notice

of the allegations against him and was interviewed by the independent investigator. He was given an opportunity to review and respond to the investigator's report. Plaintiff submitted a lengthy written response to the investigator's report. Plaintiff appeared through counsel a hearing before the Conduct Committee which lasted for five day and during which he was allowed to present evidence and argument concerning the allegations against him. Although the Conduct Committee found against him and recommended that he be expelled from the House, Plaintiff was still entitled to be heard by the House itself before that body would vote on his expulsion. Plaintiff resigned from his seat before the debate and vote were to take place and so deprived himself of the opportunity to address the allegations against him before the House. And, as the Court observed in its prior Order, the possibility of Plaintiff's expulsion from the House was speculative.

Although Plaintiff complains about various aspects of the process he received, such as having to present his case first before the Conduct Committee or being prevented from cross examining the witnesses who presented testimony during the hearing, the Court held in its prior Order that "these technicalities do not in themselves mean that plaintiff has failed to receive adequate due process under the Fourteenth Amendment." *Hernandez v. Oregon Legislature*, 521 F. Supp.3d 1025, 1037 (D. Or. 2021). The "very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation," and the violation of a state statute does not necessarily infringe the federal Constitution because "state action, even though illegal under state law, can be no more and no less constitutional

under the Fourteenth Amendment than if it were sanctioned by the state legislature." *Id.* (internal quotation marks and citations omitted). Furthermore, in a similar challenge to an expulsion from the Arizona state legislature, the Ninth Circuit rejected the notion that the due process clause necessarily encompasses the sort of procedural protections asserted by Plaintiff in the present case. *Shooter v. Arizona*, 4 F.4th 955, 962-66 (9th Cir. 2021). As with its prior Order, the Court concludes that Plaintiff was not deprived of a meaningful opportunity to be heard or to dispute the allegations made against him save, perhaps, by his own decision to resign before he had an opportunity to make his case to the House. The Court concludes Plaintiff has failed to state a claim for violation of his due process rights and that his as-applied challenge to Rule 27 based on the violation of those rights similarly fails.

### 2. First Amendment Retaliation

In determining whether a public employee has suffered retaliation for asserting his First Amendment rights, court must determine (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). A plaintiff bears the burden of demonstration at the first three steps of the inquiry; at step four, the burden shifts to the defendant. *Id.* at 1070-72.

Steps one, two, and four are questions of law; steps three and five are questions of fact. *Id.*

As noted, this claim relates to the allegation that Plaintiff suffered retaliation from Defendants for posting a statement opposing the Rule 27 investigation on his campaign Facebook page, which Plaintiff alleges was characterized as retaliation by him against the complainants under Rule 27. Compl. ¶ 47. As the Court noted in its Order denying the TRO, there is good reason to doubt whether Plaintiff's Facebook post was made in his private capacity. *Hernandez*, 521 F. Supp.3d at 1038. It is not ultimately necessary to reach that issue, however, because Plaintiff has not alleged that he suffered an adverse employment action based on Facebook post, beyond the conclusory statement Fahey, Noble, Sandmeyer, and Kotek took "adverse actions against him." Compl. ¶ 69. At most, it appears that Plaintiff's post was labeled as retaliatory and, perhaps referred it to the LEO for investigation, but it is not alleged to have been part of the Conduct Committee's decision, nor was it part of House Resolution 1. The Court concludes that Plaintiff has failed to state a claim for First Amendment retaliation and so Plaintiff's as-applied challenge to Rule 27 must fail.

### B. Facial Challenge to Rule 27

Plaintiff does not substantively respond to Defendants' motion to dismiss his facial challenge to Rule 27, beyond briefly asserting that he has stated a claim. Facial challenges are disfavored because they (1) "raise the risk of premature interpretation of statute on factually barebone records,"; (2) run contrary "to the fundamental principle of judicial restraint,"; and (3) "threaten to short circuit the democratic

process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450-51 (2008) (internal quotation marks and citations omitted). As such, the Supreme Court has held, a "facial challenge to a legislative Act is, of court, the most difficult challenge to mount successfully, since the challenger must establish that *no set of circumstances* exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987) (emphasis added).

In this case, Plaintiff has failed to meet this burden. As demonstrated in the failure of Plaintiff's as-applied challenge, Plaintiff cannot show that there is no set of circumstances in which Rule 27 could not be applied constitutionally. Plaintiff's facial challenge to Rule 27 is therefore DISMISSED.

## II.    Plaintiff's Claim for Injunctive Relief is Moot

Plaintiff's second claim for relief seeks an injunction preventing the House from taking up the Conduct Committee's recommendation. Defendants move to dismiss on the basis that Plaintiff's resignation render this claim moot. "The doctrine of mootness, which is embedded in Article III's case or controversy requirement, requires that an actual, ongoing controversy exist at all stages of federal court proceedings." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 862 (9th Cir. 2017) (internal quotation marks and citation omitted). A claim is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980). If a claim is

moot, a federal court lacks subject matter jurisdiction. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992). "The question of mootness focuses on whether we can still grant relief between the parties." *Dream Palace v. Cnty. of Maricopa*, 384 F.3d 990, 1000 (9th Cir. 2004) (internal quotation marks and citation omitted). "The party asserting mootness bears the heavy burden of establishing that there remains no effective relief a court can provide." *Bayer*, 861 F.3d at 862.

"A request for injunctive relief remains live only so long as there is some present harm left to enjoin." *Bayer*, 861 F.3d 864. "Despite being harmed in the past, the [plaintiffs] must still show that the threat of injury in the future is 'certainly impending' or that it presents a 'substantial risk' of recurrence for the court to hear their claim for prospective relief." *Munns v. Kerry*, 782 F.3d 402, 411-412 (9th Cir. 2015) (citation omitted).

In this case, the Court denied Plaintiff's request for injunctive relief and Plaintiff subsequently resigned from the House. The Conduct Committee's resolution recommending Plaintiff's expulsion has been dropped and a new representative has taken Plaintiff's seat. There is no impending harm threating Plaintiff for the Court to enjoin, nor is there any prospect that the past harm will recur. Accordingly, the Court concludes that Plaintiff's claim for injunctive relief is moot and must be dismissed.

### III.    Plaintiff's Claims under 42 U.S.C. § 1983

Plaintiff brings claims against the individual Defendants alleging violation of his due process and equal protection rights, as well as a claim for retaliation in

violation of the First Amendment. Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). To maintain a claim under § 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

Defendants assert that Plaintiff has failed to state a claim for violation of his rights. For the reasons discussed in the previous section, the Court concludes that Plaintiff has failed to state a claim for violation of his procedural due process rights or for First Amendment retaliation against the individual defendants under § 1983. Those claims are therefore dismissed. In addition, Defendants assert that Fahey, Noble, and Kotek are entitled to legislative immunity.

### A. Legislative Immunity

"Under the doctrine of legislative immunity, members of Congress and state legislators are entitled to absolute immunity from civil damages for their performance of lawmaking functions." *Jones v. Allsion*, 9 F.4th 1136, 1139-40 (9th Cir. 2021). When determining the nature of a legislative act, the analysis "turns on the nature of the act, rather on the motive or intent of the official performing it." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). While members of a legislative body may engage in both legislative and ministerial functions, the authority to do so does not affect the analysis of whether or not a given act is legislative. Actions that are

"integral steps in the legislative process" or bear "all the hallmarks of traditional legislation" are within the bounds of legislative immunity. *Id.* at 55-56. Decisions encompassing discretion and policymaking are considered "integral steps." *Id.* at 55.

Activities within the sphere of legislation are distinguished from ministerial duties, which are not afforded immunity. Ministerial acts are those that are mandatory or not within the discretionary function of the legislator. *Bogan*, 523 U.S. at 50. In the Ninth Circuit, determining whether an act is legislative requires the consideration of four factors: (1) whether the act involves ad hoc decision-making, or the formulation of policy; (2) whether the act applies to a few individuals, or the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears "all the hallmarks of traditional legislation." *Kaahumanu v. Cnty. of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2003).

In this case, the Court concludes that the Conduct Committee's decision was likely ad hoc decision-making, although the decision to recommend the expulsion of a member of the legislature under a system for resolving allegations of harassment cannot be entirely divorced from questions of policy-making. And although the decision only concerned Plaintiff himself, the Ninth Circuit has observed that Congress and the legislatures have the power to enact private bills affecting individuals and that such acts often fall within the definition of legislative acts. *Kaahumanu*, 315 F.3d at 1222. The final two factors weigh heavily in favor of legislative immunity, however. The allegations against Plaintiff were considered by a legislative committee, which reached its decision by a unanimous vote. The

Committee's decision and recommendation were then transmitted to the House in the form of a resolution for the consideration of the whole body. It is also significant that, under the Oregon Constitution, the only way to expel a member of the Legislature is by a two-thirds vote of the chamber in which the individual is a member. In contrast to a more conventional employer-employee disciplinary matter, the process for expelling a member of the Oregon Legislature is decidedly legislative in both form and function. Accordingly, the Court concludes that the challenged acts are legislative in character and so Fahey, Noble, and Kotek are entitled to absolute immunity.

### B. Equal Protection

Plaintiff's final claim alleges that the disciplinary procedures were applied to him in violation of his Fourteenth Amendment right to equal protection. "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of he Fourteenth Amendment, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Shooter*, 4 F.4th at 960 (internal quotation marks and citation omitted, alteration normalized). The Ninth Circuit has "held that § 1983 claims based on Equal Protection violations must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).

In this case, Plaintiff alleges that he is Latino and that Defendant's effort to expel him "are based substantially on Plaintiff's race and/or national origin." Compl.

¶ 63. In support of this claim, Plaintiff offers only that "[t]he Legislature has had many Caucasian members who have committed much more severe acts than Plaintiff, but have never proposed expulsion for a Caucasian member." *Id.*[5] This allegation conflates the Oregon Legislature, as a body, with the individual Defendants named in Plaintiff's claim and further conflates the historical acts of that body with the individual Defendants. Plaintiff's allegations of discriminatory intent by the named Defendants are conclusory and unsupported by any factual allegations from which the Court might infer discriminatory intent on the part of the named Defendants. The Court therefore concludes that Plaintiff has failed to state a claim for violation of his equal protection rights.

## CONCLUSION

Defendants' Motion to Dismiss, ECF No. 18, is GRANTED and the Complaint is DISMISSED without leave to amend. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this ___29th___ day of November 2021.

/s/Ann Aiken
ANN AIKEN
United States District Judge

---

[5] Although it occurred after the Complaint was filed and is beyond the scope of the present motion, the Court notes that on June 10, 2021, the Oregon House of Representatives voted 59-1 to expel Representative Mike Nearman for disorderly conduct. Representative Nearman was the only dissenting vote. *See* https://olis.oregonlegislature.gov/liz/2021R1/Measures/Overview/HR3 (last accessed November 24, 2021). Representative Nearman is the first person in the history of the Oregon House of Representatives to be expelled. *See* https://www.opb.org/article/2021/06/10/oregon-house-of-representatives-vote-mike-nearman-expulsion-state-capitol-incursion/ (last accessed November 24, 2021).